IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**CHRISTOPHER HARRIS**,

      **Petitioner,**

v.                                         Case No.: 1:20-cv-00260

**WARDEN C. MARUKA,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Christopher Harris's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 and Respondent C. Maruka's request that the action be dismissed (ECF Nos. 1, 6). This case is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by Standing Order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241; **GRANT** Respondent's request to dismiss; and **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

**I.**    **Factual and Procedural Background**

Harris is a federal inmate incarcerated in Federal Correctional Institution ("FCI") McDowell in Welch, West Virginia. On April 13, 2020, Harris filed the instant action challenging his loss of good conduct time ("GCT") and privileges following a

1

determination that he had committed a prohibited act. (ECF No. 1). In an accompanying memorandum, Harris asserts that he was issued Incident Report No. 3167430 ("the incident report"), which charged Harris with a violation under Code 201 for fighting with another person. (ECF No. 2 at 1). While Harris does not provide a summary of the facts, documents filed by Respondent reveal that the violation arose from an incident that occurred on September 8, 2018. (ECF No. 6-1 at 62). According to the incident report, Lieutenant C. Diamond observed Harris and four other inmates engaged in a fight during breakfast. (*Id.*). After Lieutenant Diamond ordered the inmates to stop fighting and they refused, Lieutenant Diamond used pepper spray on the inmates repeatedly until they were restrained by staff and escorted elsewhere. (*Id.*). Harris was charged with committing Prohibited Act Codes 201 and 307, fighting with another person and refusing to obey a staff order, respectively. (ECF No. 6-1 at 51, 55, 62).

At his September 17, 2018 disciplinary hearing before Discipline Hearing Officer Leslie ("DHO Leslie"), Harris waived his right to a staff representative and witnesses, presented no documentary evidence, and admitted to the charge in the incident report. (*Id.* at 69). Relying on information contained in the incident report, as well as photographs and memoranda from multiple staff members, and Harris's own admission of culpability, on October 5, 2020, DHO Leslie found that Harris committed the Code 201 violation, as charged, but not the Code 307 violation. DHO Leslie sanctioned Harris by disallowing 27 days of accrued GCT and imposing 14 days of disciplinary segregation. (*Id.* at 69–70). Harris appealed this decision in accordance with BOP procedure and has exhausted his administrative remedies. (*Id.* at 4). Subsequently, he filed this action.

In his petition, Harris asserts that the disciplinary procedure afforded to him violated his due process rights because the Unit Discipline Committee ("UDC") and DHO Leslie failed to obtain and review video footage which Harris claims would "exonerate" him. He asks the Court to dismiss the sanctions and incident report and expunge it from his record. (ECF No. 1 at 4–5). In an accompanying memorandum, Harris explains that "preservation of the film of incident area was requested at [the UDC] hearing and DHO hearing at both regional and central levels of appellate process" and that the lack of film evidence "removes the only infallible eye-witness account" of the incident. (ECF No. 2 at 2). He cites repeatedly to a landmark Supreme Court case concerning disclosure of exculpatory evidence in criminal matters, *Brady v. Maryland*, 373 U.S. 83 (1963), to support the notion that due process requires disclosure of the video footage. (*Id.* at 2–4). According to Harris, he was issued DHO Leslie's report by a person unauthorized to do so under the Bureau of Prisons' ("BOP") own regulations, which, though he acknowledges this action was harmless, supports his premise that the disciplinary process is "tainted by negligence in following [BOP] policy procedures." (*Id.* at 3). Harris alleges that DHO Leslie's failure to review the video evidence before arriving at a finding of guilt violates Harris's rights under the Fifth and Eighth Amendments. (*Id.* at 5). He also cites to BOP policies that encourage preservation of video evidence and, without explaining why, asserts that the existence of such policies supports the contention that "he had continuously asked for preservation of the exculpatory" video evidence. (*Id.* at 6). He adduces that the disciplinary process was "tainted by negligence" due to the BOP's failure to follow its policy, and this negligence denied him his right to "a fair and impartial hearing." (*Id.* at 7). In the memorandum, Harris does not request reinstatement of his GCT and

3

expungement of the sanction; instead, he asks this Court to direct the BOP to "preserve and review film footage" of the incident and hold a rehearing. (*Id.* at 8).

On April 17, 2020, the undersigned ordered Respondent to answer Harris's petition. (ECF No. 5). Respondent's response was filed on June 9, 2020. (ECF No. 6). Therein, Respondent explains the BOP's disciplinary process. (*Id.* at 2–5). According to Respondent, the disciplinary process for inmates within federal custody is delegated to the BOP by statute, 18 U.S.C. § 4042. (*Id.* at 2). Regulations promulgated pursuant to this authority, found at 28 C.F.R. § 500 *et seq.*, further explain the process the BOP employs. (*Id.* at 2–4). In essence, when a staff member has a reasonable belief that an inmate has violated BOP regulations, the staff member prepares an incident report, which is then investigated by staff, reviewed by a UDC, after which, if the charges are serious, is referred to the DHO. (*Id.* at 2–3). The DHO provides a hearing for which inmates can request a staff representative, and may call witnesses, make a statement, and present evidence, after which the DHO determines whether the inmate violated regulations based on "at least some facts." (*Id.* at 3–4). Respondent summarizes the facts in this case, which track with the version of events contained in the incident report and DHO Leslie's hearing report. (*Id.* at 5–7). Respondent emphasizes that at no point in the disciplinary process did Harris request review of video footage from the incident, and any video that may have existed at the time is no longer recoverable. (*Id.* at 5–6). He argues that the disciplinary process afforded to Harris complies with the standards set forth by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985). (*Id.* at 8). Respondent addresses the United States Court of Appeals for the Fourth Circuit's ("Fourth Circuit's") recent decision in *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019),

4

which established that in disciplinary proceedings in which a liberty interest such as GCT is at stake, "upon an inmate's request, the [DHO] must review video surveillance" unless doing so would be unduly hazardous to institutional safety or correctional goals. (*Id.* at 8–9). Respondent distinguishes Harris's case from *Lennear*, arguing that, unlike in *Lennear*, the record shows that Harris did not request review of the video footage and admitted to the charge in the incident report. (*Id.* at 10). He further argues that the records presented to the Court are entitled to a presumption of regularity, and the evidence relied upon by DHO Leslie was sufficient pursuant to the standard set forth in *Hill*. (*Id.* at 11–13). Respondent also attached a declaration from DHO Leslie in which she provides a similar factual account of Harris's disciplinary proceedings and states that Harris did not ask for video review at any stage of the disciplinary process. (ECF No. 6-1 at 1–4).

Harris's reply was filed on August 6, 2020. (ECF No. 8). He argues that DHO Leslie's refusal to "procure and preserve the film constitutes a blatant miscarriage of justice." (*Id.* at 1). He cites again to the BOP's policy for preserving evidence, postulating that failure to comply with the policy constitutes a due process violation. (*Id.* at 2). He implies that it was incumbent upon the BOP to procure and preserve the footage even without an inmate request, stating that "it stands to reason that the effort of preserving the video footage would have simply been the direction to be taken...." (*Id.* at 2). Nevertheless, he asserts that he "verbally asked specifically and upon three different occasions to preserve and review the film footage" and that the BOP's failure to do so violated his rights. (*Id.* at 4–5).

## II. <u>Standard of Review</u>

Respondent does not identify the standard under which he seeks dismissal of

Harris's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

Harris makes reference in his filings to his "due process" rights and rights under the "fifth and eighth amendment." (ECF No. 2 at 5). However, as Harris is challenging the adequacy of the disciplinary procedure he was afforded at FCI McDowell, his claim is subject to analysis under the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"). The Due Process Clause of the Fourteenth Amendment protects inmates from deprivations of life, liberty, or property without due process of law. *Wolff,* 418 U.S. at 556. Harris has a constitutionally protected liberty interest in his GCT, as such time impacts the duration of his sentence. *See, e.g. Marino v. Masters*, No. 1:12-cv-00393, 2015 WL 66511, at \*5 (S.D.W. Va. Jan. 5, 2015) (citing *Ponte v. Real,* 471 U.S. 491, 495 (1985)). Accordingly, when a federal prisoner is subject to a disciplinary proceeding that may result in the loss of GCT, the prisoner is guaranteed certain minimal requirements of procedural due process, including:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff,* 418 U.S. at 563–567). The DHO follows a procedure that incorporates these due process protections. *See* 28 C.F.R. § 541.8.

Harris asserts that his due process rights were violated because neither DHO Leslie nor any other adjudicator reviewed video footage of the incident. (ECF Nos. 2 at 5–7; 8 at 2). According to Harris, failure to adhere to the BOP's regulation at 28 C.F.R. § 541.7 and BOP Program Statements 5270.02 and 5270.09 concerning presentation of evidence in disciplinary proceedings violated his due process rights. (ECF Nos. 2 at

6; 8 at 4). However, "failure to follow prison rules or regulations does not, without more, give rise to a constitutional violation." *Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996)). Program Statement 5270.09 states:

> If the inmate requests exculpatory evidence, such as video or audio surveillance, the investigator must make every effort to review and preserve the evidence. It would also be prudent for the investigator to review and preserve the video or audio surveillance even if the inmate does not make a specific request as such evidence is relevant to the incident.

(ECF No. 6-1 at 24). The BOP admittedly did not preserve or review video footage related to the incident at issue and the record indicates that Harris did not request it. (*Id.* at 3, 69). However, because Harris insists that he did in fact request video evidence, this Court will accept as true his contention that he "verbally asked specifically and upon three different occasions to preserve and review the film footage." (ECF No. 8 at 4).

To determine if the alleged failure to preserve video evidence upon request constitutes a due process violation, this Court is informed by the recent Fourth Circuit case, *Lennear v. Wilson*, 937 F.3d 257 (4th Cir. 2019). In *Lennear*, the Fourth Circuit held that the petitioner's right to due process was violated when he disputed the version of events set forth in the incident report and provided a sworn affidavit stating he requested access to video documentation to support his position, a claim that went uncontroverted by the respondent. *Lennear*, 937 F.3d at 267. The Fourth Circuit held that "upon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" *Id.* at 269 (quoting

8

*Wolf v. McDonnell*, 418 U.S. 539, 566). A procedural error, such as failing to procure and review video footage upon request without an enunciation of the reasons for such failure, is subject to "harmless error" review. *Lennear*, 937 F.3d at 276 (citing *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004)). Failure to disclose or consider video evidence is not harmless if "the excluded evidence could have aided the inmate's defense." *Id.* at 277 (quotations omitted). If a procedural error was harmless, the Court will not disturb the DHO's judgment.

Assuming *arguendo* that Harris thrice requested video footage and prison officials withheld it from him in error, such error was harmless because it could not have aided Harris's defense. At his hearing before DHO Leslie, Harris *admitted* to the charge in the incident report; he did not proffer a defense. (ECF No. 6-1 at 69). District courts interpreting *Lennear* have found that its holding does not apply when the inmate charged with prohibited conduct admits to the charge. *Meyers v. Streeval*, No. 7:19-CV-00773, 2020 WL 6582829, at *3 (W.D. Va. Nov. 10, 2020) (finding that inmate's admission to the charge "eliminat[ed] the need for the video"); *Duprest v. Rios*, 2020 WL 3492553, at *3 (D. Minn. June 8, 2020), *report and recommendation adopted*, 2020 WL 3491631 (D. Minn. June 26, 2020) ("[I]t is unclear how video surveillance footage of the seizure of the cellular phone would have helped Petitioner in light of his admission that he was guilty of possessing it"). In contrast, cases in which the rule in *Lennear* bears on the due process rights of inmates in disciplinary proceedings involve disagreement about the inmate's culpability for the offense. *See, e.g.*, *Ali v. Hooks*, No. 1:19CV481, 2020 WL 473626, at *8–9 (M.D.N.C. Jan. 29, 2020), *report and recommendation adopted*, No. 1:19CV481, 2020 WL 2572359 (M.D.N.C. May 21, 2020) (holding that evidence at the hearing that the petitioner "did, in fact,

9

request the videocamera footage" undermined Respondent's contentions); *Neal v. Streeval*, No. 7:19CV00139, 2020 WL 1472164, at \*5–7 (W.D. Va. Mar. 26, 2020).

To facilitate resolution of the petition, this Court has accepted Harris's factual allegations as true. Nonetheless, the Court cannot ignore that Harris has provided *no* evidence to substantiate his representations, while the records of the disciplinary process entirely contradict Harris's recollections. As Respondent notes, Harris's admission to fighting simply cannot be reconciled with his claim that he requested "exculpatory surveillance footage." (ECF No. 6 at 10). Despite Harris's assertion that the charge had "no merit and was circumstantial at best," (ECF No. 1 at 4), he offers no alternative version of events to contradict the factual basis for the charge as described in the incident report, nor does he explain why he admitted being guilty of the charge if video footage would have exonerated him. Therefore, the undersigned **FINDS** that the failure to preserve and review video footage related to Harris's disciplinary violation was, at most, harmless error, and further **FINDS** that the disciplinary procedure afforded to Harris comports with due process. Accordingly, he is not entitled to relief from the DHO's findings.

Throughout his filings, Harris cites repeatedly to *Brady v. Maryland*, 373 U.S. 83 (1963). In the context of Harris's arguments, *Brady* stands for the basic proposition that the government is required to disclose exculpatory evidence to defendants in criminal matters. However, the matter at issue here is a prison disciplinary proceeding, not a criminal trial, as was the case in *Brady*. The Fourth Circuit has so far declined to extend the holding of *Brady* to prison disciplinary proceedings. *Lennear*, 937 F.3d 257, 268 fn. 9 (acknowledging the split among Courts of Appeals as to *Brady's* application in prison discipline and refusing to extend it); *see also Wise v. Carpenter*, 838 F.2d

469 (4th Cir. 1988) (unpublished) (rejecting that "the full panoply of criminal trial rights flowing from Brady and its progeny apply to prisoners in disciplinary settings"). Therefore, the undersigned **FINDS** that *Brady* does not apply to Harris's case, and, because Harris offers no other basis to overturn the findings of DHO Leslie, further **FINDS** that Harris's petition should be dismissed.

IV. **Proposal and Recommendations**

For the aforementioned reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Harris's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) be **DENIED,** and that this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766

11

F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** December 9, 2020

Cheryl A. Eifert
United States Magistrate Judge